IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JOHN DANIEL O'NEILL,

       Petitioner,

v.

                                           Civil Action No. **3:10CV157**

DIRECTOR, VIRGINIA DEPARTMENT
OF CORRECTIONS,

       Respondent.

## MEMORANDUM OPINION

John Daniel O'Neill has submitted a petition for a writ of habeas corpus under 28 U.S.C. § 2254 ("§ 2254 Petition") challenging his convictions in the Circuit Court for the City of Hampton (the "Circuit Court"). Respondent has moved to dismiss on the grounds that, *inter alia*, the action is barred by the relevant statute of limitations. O'Neill has responded. The matter is ripe for disposition.

## I. Procedural History

After a bench trial, the Circuit Court convicted O'Neill of eight counts of rape, six counts of object sexual penetration, two counts of attempted rape, and one count of child pornography. On July 9, 2001, the Circuit Court entered the final judgment with respect to those convictions and sentenced O'Neill to eight life sentences and seventy-eight years. O'Neill appealed. The Court of Appeals of Virginia denied his petition for appeal. O'Neill then filed a petition for appeal with the Supreme Court of Virginia. On August 7, 2002, the Supreme Court of Virginia refused O'Neill's petition for appeal. (Resp't's Br. Supp. Mot. Dismiss Ex. 2 Attach.); *O'Neil* [sic] *v. Commonwealth*, No. 021183 (Va. Aug. 7, 2002).

On March 30, 2009, O'Neill filed a petition for a writ of habeas corpus with the Circuit

Court. *O'Neill v. Diggs*, CL09-1078, at 2 (Va. Cir. Ct. Aug. 24, 2009).  On August 24, 2009, the

Circuit Court denied the petition for a writ of habeas corpus on the ground that it was barred by

the state statute of limitations for habeas petitions. *Id. (citing* Va. Code 8.01-654(A)(2)).[1]

O'Neill appealed that decision to the Supreme Court of Virginia. On November 9, 2010, the

Supreme Court of Virginia refused O'Neill's petition for appeal. (Resp't's Br. Supp. Mot.

Dismiss Ex. 4); *O'Neill v. Diggs*, No. 092218 (Va. Nov. 9, 2010).

In March of 2010, O'Neill filed his present § 2254 Petition with this Court.[2]  In his

§ 2254 Petition, O'Neill contends that he is entitled to relief upon the following grounds:

| Claim One | "State Court's dismissal of habeas petition asserting default under 8.01-654(A)(2) [is] not an adequate state decision for dismissal and Federal Court is not precluded from review." (§ 2254 Pet. 6.) |
|---|---|
| Claim Two | "Effective assistance of counsel completely denied for over 100 days after Jul. 9, 2001 appointment." (*Id.* at 7.) |
| Claim Three | Appellate counsel was ineffective in litigating O'Neill's appeal. |
| Claim Four | "Effective representation denied on appeal by [appellate counsel's] submission of client unapproved petition completely devoid of significant evidence supporting counsel's own speculative arguments causing petition [to be] dismissed." (*Id.* at 11.) |

---

[1] That statute provided, in pertinent part, that "[a] habeas corpus petition attacking a criminal conviction or sentence . . . shall be filed within two years from the date of final judgment in the trial court or within one year from either final disposition of the direct appeal in state court or the time for filing such appeal has expired, whichever is later." Va. Code Ann. 8.01-654(A)(2) (West 2009).

[2] The Court received O'Neill's § 2254 Petition on March 30, 2010.  O'Neill completed the § 2254 Petition and placed it in the prison mail system on March 18, 2010. (§ 2254 Pet. 15.) The envelope for the § 2254 Petition, however, reflects that the § 2254 Petition was mailed to the Court from Newport News, Virginia rather than O'Neill's place of incarceration.  Nevertheless, even if O'Neill received the benefit of deeming his § 2254 Petition filed on the date he placed it in the prison mail system, it would not change the outcome of the case.

Claim Five       "Fundamentally unfair admission of DNA evidence." (*Id.* at 16.)

Claim Six        "Material impeachment evidence with held in violation of Brady." (*Id.* at 18.)

Claim Seven      "Violation of Constitutional right to fundamentally fair trial adjudicated before an impartial judge." (*Id.* at 20.)

Claim Eight      "Prosecution[']s failure to present essential elements of crime beyond a reasonable doubt violates due process and results in manifest miscarriage of justice." (*Id.* at 22.)

Claim Nine       "Actual innocence evidence exonerates Mr. O'Neill of 7 convictions and demonstrates a miscarriage of justice." (*Id.* at 24.)

Claim Ten        "Ineffective assistance of appellate counsel for failure to present ineffective assistance of trial counsel on appeal." (*Id.* at 26.)

Claim Eleven     "Ineffective assistance of counsel for appellate counsel's refusal to present actual innocence evidence on appeal." (*Id.* at 28.)

Claim Twelve     "Ineffective assistance of trial counsel for failure to investigate and submit exonerating evidence during sentencing hearing." (*Id.* at 30.)

## II. Limitation Period for Federal Habeas Relief

Federal law imposes a one-year limitation period on state prisoners seeking to file a petition for a writ of habeas corpus. Specifically, 28 U.S.C. § 2244(d) states:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of —

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

3

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

### III. Analysis

Generally, "the one-year limitation period begins running when direct review of the state conviction is completed or when the time for seeking direct review has expired." *Hill v. Braxton*, 277 F.3d 701, 704 (4th Cir. 2002) (*citing* 28 U.S.C. § 2244(d)(1)(A)). O'Neill had ninety days from August 7, 2002, the date the Supreme Court of Virginia refused his petition for appeal, in which to file a petition for a writ of certiorari with the Supreme Court of the United States. Sup. Ct. R. 13.1; *see Hill*, 277 F.3d at 704 (*citing Harris v. Hutchinson*, 209 F.3d 325, 328 n.1 (4th Cir. 2000)). Hence, O'Neill's conviction became final, as that term is defined in 28 U.S.C. § 2244(d)(1)(D), on Tuesday, November 5, 2002. Therefore, O'Neill was required to file his federal habeas petition by November 5, 2003. O'Neill did not file his § 2254 Petition until 2010.[3] Therefore, the § 2254 Petition is barred by the statute of limitations unless O'Neill demonstrates that he is entitled to a belated commencement of the limitation period under 28 U.S.C. § 2244(d)(1)(B)–(D) or equitable tolling. O'Neill contends that he is entitled to a belated commencement under 28 U.S.C. § 2244(d)(1)(B) and equitable tolling. As explained below, both arguments lack merit.

---

[3] O'Neill is not entitled to statutory tolling under 28 U.S.C. § 2244(d)(2) for his state habeas proceedings which were pending in 2009 and 2010. First, there was no limitation period to toll because the limitation period already had expired by the time O'Neill filed his state habeas petition. *See Deville v. Johnson*, No. 1:09cv72(CMH/TRJ), 2010 WL 148148, at *2 (E.D. Va. Jan. 12, 2010) (*citing Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir. 2000)). Second, because O'Neill's state habeas petition was untimely under Virginia law, it was not "properly filed" within the meaning of 28 U.S.C. § 2244(d)(2). *See Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005).

**A.     O'Neill Is Not Entitled to a Belated Commencement of the Limitation Period Under 28 U.S.C. § 2244(d)(1)(B).**

To delay the running of the statute of limitations, § 2244(d)(1)(B) requires:  (1) state action that both (2) violated the Constitution or laws of the United States and (3) prevented the prisoner from filing a habeas petition.  *Ocon-Parada v. Young*, No. 3:09cv87, 2010 WL 2928590, at *2 (E.D. Va. July 23, 2010) (*citing Johnson v. Fla. Dep't of Corr.*, 513 F.3d 1328, 1331–32 (11th Cir.  2008)).  As pertinent here, O'Neill contends that he is entitled to a belated commencement of the limitation period because:  (1) counsel failed to turn over to O'Neill his complete case file in a timely fashion; (2) in the fall of 2003, after O'Neill obtained some of his legal files from counsel, correctional officers at Red Onion State Prison repeatedly harassed O'Neill and searched his cell; and (3) the harassment by correctional officers prompted O'Neill to mail some of his legal files to his parents.  Subsequently, in 2004, the Warden at Red Onion would not allow O'Neill's parents to mail his legal files to O'Neill as "legal mail." (Supp'l Br. Supp. § 2254 Pet. (Docket No. 3) 7.)

O'Neill cannot demonstrate that the limitation period did not commence as of November 5, 2002, and continued to run for the following year.  Therefore, it is unnecessary to address O'Neill's arguments for the application of § 2244(d) in years following 2003.[4]

---

[4] After 2004, O'Neill contends that he continued to experience difficulties with prison officials and attorneys in obtaining legal files and research.  It is unnecessary to address whether these incidents would warrant a belated commencement of the limitation period because the limitation period already had expired.

5

### 1.   Any Omission by O'Neill's Counsel Did Not Constitute State Action.

Under § 2244(d)(1)(B), the "impediment to filing . . . must be created by *state action*." *Finch v. Miller,* 491 F.3d 424, 427 (8th Cir. 2007) (*citing* 28 U.S.C. § 2244(d)(1)(B)). The "conduct of counsel, whether retained or appointed, does not constitute state action." *Id.* (*citing Holbird v. Armstrong-Wright,* 949 F.2d 1019, 1020 (8th Cir. 1991)); *accord Dunker v. Bissonnette,* 154 F. Supp. 2d 95, 104–05 (D. Mass. 2001); *see Polk Cnty. v. Dodson,* 454 U.S. 312, 324–25 (1981) ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding.); *see also Johnson,* 513 F.3d at 1331.  Thus, O'Neill is not entitled to a belated commencement of the limitation period based upon any delays by counsel in transmitting his case file.

### 2.   O'Neill Fails to Demonstrate that the Conduct of Prison Officials Was Unconstitutional or Actually Prevented Him From Filing a Habeas Petition.

"[A] state-created impediment must, to animate the limitations-extending exception [of § 2244(d)(1)(B)], 'prevent' a prisoner from filing for federal habeas relief." *Wood v. Spencer* 487 F.3d 1, 7 (1st Cir. 2007).  This requires the petitioner to allege specific facts as to how he was prevented from filing a habeas action prior to November of 2003.  *See Clark v. Oklahoma,* 468 F.3d 711, 714 (10th Cir. 2006) (refusing to apply § 2244(d)(1)(B) where the petitioner "failed to explain why the documents held by the state were necessary to pursue his federal claim"); *Wood,* 487 F.3d at 7 (refusing to apply § 2244(d)(1)(B), when petitioner "with the exercise of garden-variety diligence" could have discovered the pertinent facts in a timely fashion).  O'Neill does not adequately specify how the lack of access to any particular document prevented him from filing in a timely manner.

6

Although O'Neill repeatedly decries that the files sent him by counsel were incomplete, it is equally apparent that by September of 2003, O'Neill had a substantial portion of the relevant files.[5] Nevertheless, O'Neill insists that he is entitled to a belated commencement of the limitation period after September of 2003 because he was harassed by prison officials. O'Neill contends that after September, when he had a large stack of legal files and transcripts detailing his child molestation case, he was harassed by certain correctional officers. (Supp'l Br. Supp. § 2254 Pet. 6.)

> The officers began to single Mr. O'Neill's cell, not others, for "walk through inspections" several times a week and nearly every other week for months would find/make some reason to require a complete shakedown involving the entire contents of his room and every package and envelope within it. Over Mr. O'Neill's vehement protests they would disassemble his entire set of 6 trial, sentencing, and multiple hearing transcripts, consisting of well over 1200 pages, and page by page scatter them loosely onto the floor with the rest of Mr. O'Neill's legal and personal papers. . . . [T]hese legally un-trained officers were casually at a glance determining random pages as "obscene worthless trash" and disposing of them. . . .
> It became obvious to Mr. O'Neill this could not continue as his legal files were being purposefully destroyed. He had to protect his files until these particular officers were rotated out of the pod and away from him.

(*Id.* at 6–7.) Therefore, "Mr. O'Neill sent most of his legal file and most of the 1200 plus page transcripts home for safekeeping, only holding on to a small portion he could safely work on in sections." (Br. Supp. Statement Genuine Issues (Docket No. 34) 11.) O'Neill believed he could simply retrieve the files when the troublesome officers were rotated off his unit. Nevertheless, when O'Neill attempted to retrieve his legal files from his parents in March of 2004, the Warden of Red Onion Correctional Center refused, because "'[i]nmates may only receive legal mail from an attorney using legal mail.'" (Supp'l Br. Supp. § 2254 Pet. 7.)

---

[5] O'Neill acknowledges that counsel sent him the transcripts of his criminal file on September 11, 2003. (Supp'l Br. Supp. § 2254 Pet. 6.)

7

Assuming O'Neill's account of the correctional officers' search of his cell is true and that the search was improper, O'Neill fails to demonstrate that such conduct prevented him from filing a habeas petition. O'Neill does not allege that correctional officers disposed of some specific document that was necessary for filing a habeas petition. Moreover, O'Neill fails to demonstrate that he could not file a sufficient habeas petition with the documents he could comfortably retain in his cell in the fall of 2003. "[T]here is no requirement that a habeas petitioner enumerate in his petition every fact which supports a ground for relief. Rather, Rule 2(c) of the Rules Governing § 2254 Cases provides that a petitioner need only 'set forth in summary form the facts supporting each of the grounds' specified in the petition." *Lloyd v. Van Natta*, 296 F.3d 630, 633 (7th Cir. 2002). O'Neill fails to demonstrate that his lack of access to specific documents prevented him from setting forth in summary form the facts that support his claims. *See Clark*, 468 F.3d at 714; *Weibly v. Kaiser*, 50 F. App'x 399, 403 (10th Cir. 2002) (holding petitioner's argument "insufficient because he does not allege specific facts that demonstrate how his alleged denial of [legal] materials impeded his ability to file a federal habeas petition"); *United States v. Butler*, 178 F. App'x 327, 327 (4th Cir. 2006) (observing that criminal defendants generally can rely upon their own recollection in preparing a collateral attack); *cf. Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1013–14 (9th Cir. 2009) (refusing to equitably toll limitation period where inmate had access to some, but not all of his files and did "not point to specific instances where he needed a particular document [and] could not have kept that document"). Accordingly, O'Neill fails to demonstrate that he is entitled to a belated commencement of the limitation period under § 2244(d)(1)(B).

### B.   O'Neill Is Not Entitled to a Belated Commencement of the Limitation Period Under § 2244(d)(1)(D).

Although O'Neill does not assert that he is entitled to a belated commencement of the

limitation period under § 2244(d)(1)(D), it is appropriate to briefly address that section with

respect to Claims Three, Four, Ten, and Eleven (collectively "the appellate counsel claims"),

wherein O'Neill contends that appellate counsel performed deficiently.[6]  Under § 2244(d)(1)(D),

the limitation period begins to run when the petitioner knows, or through due diligence could

have discovered, the factual predicate for a potential claim, not when he recognizes their legal

significance. *See Schlueter v. Varner,* 384 F.3d 69, 74 (3rd Cir. 2004); *Owens v. Boyd,* 235 F.3d

356, 359 (7th Cir. 2000).  In the absence of a showing that he was unaware of the factual

predicate for a particular claim, O'Neill's general complaints about not receiving the full

contents of his file from counsel do not provide any refuge from the statute of limitations.[7]  *See*

*Flanagan v. Johnson,* 154 F.3d 196, 199 (5th Cir. 1998) ("Section 2244(d)(1)(D) does not

convey a statutory right to an extended delay . . . while a habeas petitioner gathers every possible

scrap of evidence that might, by negative implication, support his claim.").  As explained below,

O'Neill does not demonstrate the factual circumstances that undergird the appellate counsel

claims were either unknown to O'Neill or not readily available to O'Neill with the exercise of

---

[6] It is unnecessary to address belated commencement for Claim One because that claim does not state a cognizable basis for federal habeas relief. *See Ingram v. Buckingham Corr. Ctr.,* No. 3:09CV831, 2011 WL 836826, at *2 (E.D. Va. Mar. 4, 2011) (dismissing claims which sought habeas relief based on alleged errors in state post-conviction proceedings (citing *Lawrence v. Branker,* 517 F.3d 700, 717 (4th Cir. 2008))).

[7] Given the fact that O'Neill specifically invoked § 2244(d)(1)(B), his lack of reference to § 2244(d)(1)(D) or specific profession of ignorance with respect to the factual predicate of a particular claim supports the conclusion that he is not entitled to a belated commencement of the limitation period under § 2244(d)(1)(B).

due diligence prior to the time his conviction became final on November 5, 2002. *DiCenzi v. Rose*, 452 F.3d 465, 471 (6th Cir. 2006).

O'Neill contends that he was unaware of the quality of counsel's brief prior to filing of the petition for appeal with the Court of Appeals of Virginia.[8] O'Neill does not identify the date on which he received appellate counsel's petition for appeal to the Court of Appeals of Virginia or the Supreme Court of Virginia. O'Neill, however, has submitted correspondence from appellate counsel to O'Neill dated April 10, 2002. The correspondence indicates that, on that date, appellate counsel sent O'Neill a copy of the decision of the Court of Appeals of Virginia and a copy of counsel's brief in support of his appeal to the Supreme Court of Virginia. (Supp'l Br. Supp. § 2254 Pet. Ex. A 31.) Furthermore, it appears that the petitions for appeal were included in the package of material sent to O'Neill in September of 2003, while he was incarcerated at Red Onion.[9] Moreover, to the extent that O'Neill desired to know the content of any brief, proceeding, or decision with respect to his direct appeal, he simply had to contact the pertinent appellate courts. *See Green v. Johnson*, 515 F.3d 290, 305 (4th Cir. 2008) (denying equitable tolling for lack of diligence where "trial counsel's failure to appeal the non-capital convictions had been public knowledge for at least two years" (*citing Wade v. Robinson*, 327

---

[8] In October of 2001, counsel told O'Neill the issues he intended to appeal. (Supp'l Br. Supp. § 2254 Pet. 2.)

[9] Although O'Neill conspicuously avoids directly acknowledging this fact, the sum of his submissions reflect that he reacquired the petitions for appeal from his parents in 2007, while incarcerated in the Nottoway Correctional Center. (Br. Supp. Statement Genuine Issues 13.) O'Neill acknowledges that the legal documents transmitted indirectly to him by his parents in 2007, were the same documents he had sent to them in the fall of 2002 from Red Onion. (Supp'l Br. Supp. § 2254 Pet. 8–9.)

10

F.3d 328, 333 (4th Cir. 2003))). Thus, O'Neill fails to demonstrate that he is entitled to a belated commencement of the limitation period under 28 U.S.C. § 2244(d)(1)(B).

**C.      O'Neill Is Not Entitled to Equitable Tolling.**

The Supreme Court has "made clear that a 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 130 S. Ct. 2549, 2562 (2010) (*quoting Pace*, 544 U.S. at 418). An inmate asserting equitable tolling "'bears a strong burden to show specific facts'" which demonstrate that he fulfills both elements of the test. *Yang v. Archuleta*, 525 F.3d 925, 928 (10th Cir. 2008) (*quoting Brown v. Barrow*, 512 F.3d 1304, 1307 (11th Cir. 2008)).

**1.      O'Neill Fails to Demonstrate Any Alleged Obstruction by Counsel or Correctional Officers Prevented Him from Filing a Habeas Petition.**

As previously explained, O'Neill fails to allege specific facts that demonstrate any alleged obstruction by counsel or prison officials actually prevented him from filing a habeas petition in a timely fashion. *See Gassler v. Bruton*, 255 F.3d 492, 495 (8th Cir. 2001). Possession of a transcript and every paper dealing with one's criminal case is not a prerequisite to seeking habeas relief. *See id.* Moreover, the record reflects that by September of 2003, O'Neill possessed a large portion of his legal file and the opportunity to review the same. Indeed, given that O'Neill had attended all the relevant proceedings and could have reviewed the pertinent records of his appellate proceedings by October of 2003, he fails to articulate specific facts which demonstrate why any temporary lack of access to a particular document prevented him from filing his habeas petition in a timely fashion. *See Waldron-Ramsey*, 556 F.3d at 1013–14; *Clark*, 468 F.3d at 714;

*Allen v. Johnson*, No. 1:08cv1343 (TSE/TCB), 602 F. Supp. 2d 724, 729 (E.D. Va. 2009) (Ellis,

J.) (refusing to equitably toll the limitation period where petitioner failed to indicate "how

exactly his lack of access to [his legal papers] impacted his ability to file timely his federal

habeas petition"). Simply put, O'Neill fails to demonstrate some external impediment, rather

than his own lack of diligence, prevented him from filing a habeas petition in a timely fashion.

> **2.      O'Neill Is Not Entitled to Equitable Tolling Based Upon His Alleged Actual Innocence.**

O'Neill also suggests that the Court should address the merits of his claims because he is

actually innocent. Neither the Supreme Court of the United States nor the United States Court of

Appeals for the Fourth Circuit has specifically addressed whether a petitioner's alleged "actual

innocence" provides a basis for excusing a petition for not complying with § 2244(d)'s limitation

period. Both those courts, however, have indicated that a petitioner's alleged innocence is not

relevant to the issue of equitable tolling. *See Holland*, 130 S. Ct. at 2562 ("[A] 'petitioner' is

'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently,

and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."

(*quoting Pace*, 544 U.S. at 418)); *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (discussing

relevant factors for equitable tolling). A growing majority of other circuits have concluded that

there is no such exception.[10] The Court agrees with Judges Smith and Lee that the reasoning of

---

[10] *See Lee v. Lampert*, 610 F.3d 1125, 1128–31 (9th Cir. 2010) (concluding there was no actual innocence exception to § 2244(d)'s statute of limitations); *Escamilla v. Jungwirth*, 426 F.3d 868, 871 (7th Cir. 2005) (holding that actual innocence "is unrelated to the statutory timeliness rules. . . . [and] does not extend the time to seek collateral relief") (internal citation omitted); *David v. Hall*, 318 F.3d 343, 347 (1st Cir. 2003) (holding that "defendants who may be innocent are constrained by the same explicit statutory or rule-based deadlines as those against whom the evidence is overwhelming"); *Cousin v. Lensing*, 310 F.3d 843, 849 (5th Cir. 2002) (stating that claims of actual innocence do not "justify equitable tolling of the limitations period"); *Flanders v. Graves*, 299 F.3d 974, 978 (8th Cir. 2002) (noting that there is no actual

the cases concluding that no actual innocence exception to the statute of limitations exists is

"compelling." *DiCaprio-Cuozzo v. Johnson*, 744 F. Supp. 2d 548, 559 (E.D. Va. Oct. 12, 2010);

*Maven v. Kelly*, No. 1:09cv480 (GBL/TRJ), 2009 WL 2242634, at *3 (E.D. Va. July 24, 2009).

Nevertheless, as explained below, even if an actual innocence exception existed, the

paltry evidence submitted by O'Neill is insufficient to establish his innocence.

### a.      Standard for a Gateway Claim of Actual Innocence

"Claims of actual innocence, whether presented as freestanding ones, *see Herrera v.

Collins*, 506 U.S. 390, 417 (1993), or merely as gateways to excuse a procedural default, *see

Schlup v. Delo,* 513 U.S. 298, 317 (1995), should not be granted casually." *Wilson v. Greene,*

155 F.3d 396, 404 (4th Cir.1998) (parallel citations omitted).  Here, the Court reviews O'Neill's

claim under the more lenient standard for gateway claims because O'Neill's actual innocence

claim would allow the Court to consider his otherwise time-barred constitutional claims.  A

gateway claim requires "new *reliable* evidence—whether it be exculpatory scientific evidence,

trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial."

*Schlup*, 513 U.S. at 324 (emphasis added).  "Because such evidence is obviously unavailable in

the vast majority of cases, claims of actual innocence are rarely successful." *Id.*

If a petitioner meets the burden of producing new, truly reliable evidence of his

innocence, the Court then considers "'all the evidence,' old and new, incriminating and

exculpatory, without regard to whether it would necessarily be admitted under 'rules of

admissibility that would govern at trial'" and determines whether the petitioner has met the

---

innocence exception separate from the usual equitable tolling factors). *But see Souter v. Jones,*
395 F.3d 577, 599–600 (6th Cir. 2005) (allowing equitable tolling of the statute of limitations
based on actual innocence); *Gibson v. Klinger*, 232 F.3d 799, 808 (10th Cir. 2000).

13

standard for a gateway claim of innocence. *House v. Bell*, 547 U.S. 518, 538 (2006) (*quoting*

*Schlup*, 513 U.S. at 327–28). The Court must determine "whether 'it is more likely than not that

no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Sharpe v.*

*Bell*, 593 F.3d 372, 377 (4th Cir. 2010) (*quoting Schlup*, 513 U.S. at 327–28). "The Court need

not proceed to this second step of the inquiry unless the petitioner first supports his or her claim

with evidence of the requisite quality." *Hill v. Johnson*, No. 3:09cv659, 2010 WL 5476755, at

*5 (E.D. Va. Dec. 30, 2010) (*citing Weeks v. Bowersox*, 119 F.3d 1342, 1352–53 (8th Cir. 1997);

*Feaster v. Beshears*, 56 F. Supp. 2d 600, 610 (D. Md. 1999)).

### b.  Overwhelming Evidence of O'Neill's Guilt

#### (i)  Jane Doe 1[11]

Jane Doe 1 testified she was born in 1988. At the time of O'Neill's trial in May of 2001,

Jane Doe 1 had been friends with O'Neill's stepdaughter, Jane Doe 4, for about four years. Jane

Doe 1 testified that the first time she was invited to spend the night at the O'Neill's home was a

couple of weeks after meeting Jane Doe 4. Jane Doe 1 and Jane Doe 4 were going to sleep in the

living room.[12] Jane Doe 1 testified that while she and Jane Doe 4 were watching movies in the

living room, O'Neill came into the living room, told Jane Doe 4 to lay on her back and spread her

legs. O'Neill then placed his penis into Jane Doe 4's vagina and began to move his waist back

and forth. After five or ten minutes, O'Neill took his penis out of Jane Doe 4's vagina and made

---

[11] As pertinent here, O'Neill was found guilty of six counts of raping Jane Doe 1, a child under the age of 13; one count of object sexual penetration of Jane Doe 1; and one count of knowingly participating in the filming or reproduction of sexually explicit visual material which utilized or had as a subject a person less than eighteen years of age.

[12] Other testimony indicated that this sleepover occurred in the summer of 1998.

a gesture over his penis with his hand.  Jane Doe 1 then saw a white liquid come out of O'Neill's penis.

After O'Neill washed his hands in the bathroom, he came back to the living room and told Jane Doe 1 to lie back, spread her legs, and take her underwear off.  O'Neill then placed his penis in Jane Doe 1's vagina and moved his waist back and forth.  Jane Doe 1 testified that it hurt, but when she tried to yell O'Neill placed a pillow over her face.  After five minutes, O'Neill pulled his penis out, made a gesture over his penis with his hand, and white liquid came out of his penis.  Jane Doe 1 testified that O'Neill told her, "'If you tell anybody about this, then you'll get taken away from your family, and you will never see them again.'" (May 2, 2001 Tr. 75.)

Sometime in February of 1999, Jane Doe 1 again spent the night at the O'Neill house.  Jane Doe 1 testified that she was watching movies with Jane Doe 4, when O'Neill came out of the back bedroom, told her to lie on her back and spread her legs.  O'Neill then placed the handle of a black and yellow screwdriver into Jane Doe 1's vagina.

After the February 1999 sleepover, Jane Doe 1 was sent back to the O'Neill house to be watched by Mrs. O'Neill.  When Mrs. O'Neill left the house, O'Neill told Jane Doe 1 to go get on the bed and pull her pants and underwear down.  O'Neill then removed his shorts and underwear, placed his penis in Jane Doe 1's vagina and began moving his waist back and forth.  After five or ten minutes O'Neill removed his penis, made a gesture over it with his hand and white liquid came out of his penis.  O'Neill then told Jane Doe 1 to lie down in the bathtub.  O'Neill then placed the tip of a blue squirt gun in Jane Doe 1's vagina and squirted water into her vagina.  O'Neill told Jane Doe 1 he had to do this because he thought some of the white liquid got inside of Jane Doe 1.  The Commonwealth produced the blue water gun at trial.

15

Jane Doe 1 spent the weekend of August 11 through August 13 at the O'Neill house.  On August 11, 2000, Jane Doe 1 and Jane Doe 4 were watching movies in the living room when O'Neill entered the room and directed Jane Doe 4 to remove her underwear.  O'Neill then placed his penis in Jane Doe 4's vagina and moved his waist back and forth.  Thereafter, O'Neill placed his penis in Jane Doe 1's vagina and began to move his waist back and forth.  After ten minutes, O'Neill removed his penis, made a gesture over it with his hands, and white liquid came out.  On Saturday night, O'Neill also had vaginal intercourse with both Jane Doe 1 and Jane Doe 4 in the living room.

On Tuesday, August 15, 2000, Jane Doe 1 went to the O'Neill house to be watched.  When Mrs. O'Neill left to go to the store, O'Neill told Jane Doe 1 to go to the back bedroom.  O'Neill then placed his penis into her vagina.  After moving his waist back and forth for about ten minutes, O'Neill removed his penis, made a gesture over it with his hand and white liquid came out.

Jane Doe 1 testified that the last time she was at the O'Neill house was August 18, 2000.  Jane Doe 1 was dropped off at the house early that morning.  After Mrs. O'Neill left to go to the store, O'Neill told Jane Doe 1 to go back to the bedroom.  After O'Neill came into the room, he turned on a camera on his computer.  Jane Doe 1 could see her image on the computer.  O'Neill then put his penis in Jane Doe 1's vagina and began moving back and forth.  After five or ten minutes, O'Neill got off of the bed and showed Jane Doe 1 a recording of him have sex with her.

### (ii)    Jane Doe 2[13]

Jane Doe 2 was born in 1990. In October or November of 1997, Jane Doe 2 testified that she was playing computer games over at O'Neill's house with Jane Doe 4 when O'Neill told Jane Doe 2 to get down on the floor. O'Neill then removed the bottom part of her clothing. O'Neill then pushed Jane Doe 2's underwear to the side and pulled down his pants. O'Neill then attempted to stick his penis into Jane Doe 2's vagina. However, O'Neill's penis "didn't really go in." (May 2, 2001 Tr. 166.) Therefore, O'Neill stuck his finger into Jane Doe 2's vagina. Jane Doe 2 testified that it hurt and she cried. O'Neill then told Jane Doe 2 that she "shouldn't tell anyone else because [her] parents would be taken away, and [she] would be put in an orphanage home." (May 2, 2001 Tr. 167.)

A few weeks after this first incident, Jane Doe 2 was back at the O'Neill house playing computer games. O'Neill entered the room and told Jane Doe 2 to lie down on the floor. Jane Doe 2 complied. O'Neill then removed Jane Doe 2's pants and pulled her underwear to the side. O'Neill pulled out his penis and attempted to place it into Jane Doe 2's vagina. When O'Neill was unsuccessful in placing his penis into Jane Doe 2's vagina, he then placed his finger in her vagina. Jane Doe 2 testified that she did not go into O'Neill's house after the second incident. Jane Doe 2 testified that she did not initially tell the truth to the police about these events because she was afraid her parents would be taken away and she would be sent to an orphanage.

---

[13] With respect to Jane Doe 2, O'Neill was found guilty of two counts of attempting to rape a child under the age of 13 and two counts of object sexual penetration of a child less than thirteen years of age.

17

### (iii)     Jane Doe 3[14]

Jane Doe 3 was born in 1995. On July 21, 2000, Jane Doe 3's mother left Jane Doe 3 at the O'Neill house because her husband was having surgery. Jane Doe 3 was playing dress up with Jane Doe 4 when O'Neill came into the room and touched Jane Doe 3's genital area. During her testimony Jane Doe 3 demonstrated on a doll how O'Neill had inserted his finger into her vagina. (May 3, 2001 Tr. 62.)

### (iv)     Jane Doe 4[15]

Jane Doe 4 was born in 1990. Jane Doe 4 was O'Neill's stepdaughter. Jane Doe 4 largely corroborated the other victim's testimonies. For example, Jane Doe 4 testified that on August 11, 2000, O'Neill came into the living room where she was watching movies with Jane Doe 1. O'Neill got on top of Jane Doe 1 and "put his boy part in her girl part." (May 3, 2001 Tr. 77.) Additionally, Jane Doe 4 confirmed that she saw O'Neill "pat[]" Jane Doe 3 "on her girl part." (May 3, 2001 Tr. 100.) Jane Doe 4 saw O'Neill "put his boy part in [Jane Doe 2's] bottom." (May 3, 2001 Tr. 107.)

Jane Doe 4 further testified that O'Neill had put his "boy part in [her] girl part" more than twenty times. (May 3, 2001 Tr. 85.) O'Neill would tell her to go to his bedroom and take off her clothes. Jane Doe 4 stated that she never told anyone about all of times O'Neill abused her because he told her that he would go to jail, Jane Doe 4's mom might go to jail, and Jane Doe 4 and her brothers would go to a foster home.

---

[14] O'Neill was convicted of object sexual object penetration of Jane Doe 3, a child of less than thirteen years of age.

[15] With respect to Jane Doe 4, O'Neill was found guilty of two counts of raping a child under the age of 13 and two counts of object sexual penetration of a child under the age of thirteen.

Jane Doe 4 provided additional testimony of abuse by O'Neill. O'Neill made Jane Doe 4 put her younger brother's "safe keep bottle" in her "girl part" when she was seven or eight. (May 3, 2001 Tr. 92, 95.) Additionally, Jane Doe 4 testified that O'Neill placed a screwdriver in her "girl part," but she could not remember the date for that abuse. (May 3, 2001 Tr. 94–95.) Jane Doe 4 testified that O'Neill used the camera attached to his computer to make "sex videos" of himself with her. (May 3, 2001 Tr. 125.)

### (v) Additional Evidence of O'Neill's Guilt

Some of O'Neill's victims were examined by sexual assault nurse examiners. One sexual assault nurse examiner opined that the abnormalities she observed of Jane Doe 3's hymen were consistent with penetration. Another sexual assault nurse examiner opined that the abnormalities she observed of Jane Doe 1's and Jane Doe 4's hymens were consistent with penetration of the hymen.

O'Neill also made obliquely damning admissions to Detective Cooper, when Detective Cooper served O'Neill with criminal charges in addition to those for which O'Neill first had been arrested. According to Detective Cooper, when he served O'Neill with the charges for Jane Doe 1,

> [O'Neill] asked if there was any others, and I advised him that the phone had been ringing off the hook all day. I advised him that I was up to six victims. He stated, "Mr. Cooper, I promise you that was it." And I wouldn't be getting any more calls. He said, "That is it."
> He, [sic] again asked, You did say six? And I did reply yes. He stated to me, "Mr. Cooper, at least two of the girls were not virgins, and there were others involved." I asked Mr. O'Neill who they were. He stated that he did not know and that . . . I would have to find out that myself.

19

(May 3, 2001 Tr. 231.)  Detective Cooper advised O'Neill that one of the new charges would

have to be dealt with in Newport News, because the crimes had occurred in that jurisdiction.

O'Neill looked puzzled.  Detective Cooper then attempted to refresh O'Neill's recollection:

> I asked him if it was involving a friend or co-worker's daughter. He, at that point, couldn't remember the name of the alleged victim.
> I left the room. I came back to advise him of the victim's name. He said: Okay, I remember that. Stated that: Her mom is nothing but a crack fiend anyway.
> He -- then he wrote on the legal pad given to him, asking for demands. . . . He went on to state that his wife had no idea what he was doing.

(May 3, 2001 Tr. 232.)

The prosecution also introduced into evidence a pair of shorts that belonged to O'Neill.

DNA evidence reflected that the inside of the shorts were stained with O'Neill's sperm.  Mixed

with the sperm stains was DNA material consistent with Jane Doe 1.  Additionally, the

prosecution introduced the keepsake bottle described by Jane Doe 4.  The top of the keepsake

bottle contained DNA consistent with Jane Doe 4.

### (vi)    Defense's Case

The defense presented a diagram of O'Neill's home.  Additionally, Mrs. O'Neill testified

her husband had a history of back problems, asthma, and was not feeling well around the dates of

some of the alleged sexual assaults.  Through Mrs. O'Neill's testimony, the defense also

suggested that O'Neill's DNA and Jane Doe 1's DNA may have become mixed on the shorts

because Jane Doe 1 might have worn the shorts in a game of dress-up.  Mrs. O'Neill also

testified that the door to the master bedroom would not entirely close because of a network cable.

### c.   O'Neill Has Not Presented New Reliable Evidence of His Innocence

O'Neill is required to support his gateway claim of innocence with "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. He has not done so. Rather, he has submitted date-stamped photos of Jane Doe 1 and Jane Doe 2 in his home and a letter purportedly from Jane Doe 4. O'Neill contends the photos impeach Jane Doe 1's and Jane Doe 2's accounts of how the furniture was arranged in his home. Additionally, O'Neill contends that the photos of Jane Doe 1 contradict or impeach Jane Doe 1's testimony regarding when she slept over at the O'Neill house.[16] O'Neill also asserts that the two photos of Jane Doe 2 show her "happy and relaxed, not scared, in the defendant's home in March of 1998." (Supp'l Br. Supp. § 2254 Pet. Ex. A 10.)[17] These photos do not provide reliable, direct evidence of O'Neill's innocence. At best, they offer marginal impeachment evidence and are insufficient to support a claim of actual innocence. *See Rose v. Newton-Embry*, 194 F. App'x 500, 501 (10th Cir. 2006); *Plaza v. Hudson*, No. 1:07-CV-674, 2008 WL 5273899, at *10 (N.D. Ohio Dec. 17, 2008).

---

[16] O'Neill cannot prove his innocence simply by demonstrating that Jane Doe 1, or the other victims, testified inaccurately about the date of the offenses. *See Felder v. Commonwealth*, No. 1617-98-2, 1999 WL 1133504, at *3 (Va. Ct. App. Aug. 3, 1999) ("[Because] time is not an element of the crime charged, the jury verdict will stand if the evidence is sufficient to prove beyond a reasonable doubt that a crime occurred and that the defendant committed the crime, even though the evidence is such that there may be a reasonable doubt as to the day on which the offense occurred. (*quoting Marlowe v. Commonwealth*, 347 S.E.2d 167, 170 (Va. Ct App. 1986))); *Booker v. Commonwealth*, No. 1603-98-1, 1999 WL 1133283, at *2 (Va. Ct. App. Aug. 3, 1999).

[17] At trial, Jane Doe 2 stated that she was scared of O'Neill after he sexually assaulted her. (May 2, 2001 Tr. 171.)

O'Neill's other evidence of his innocence is a letter purportedly written from his stepdaughter, Jane Doe 4, wherein she states:

> My name is [Jane Doe 4], the stepdaughter of Danny O'Neill. I don't remember what I said about [Jane Doe 2] or [Jane Doe 3]. I don't reme[m]ber [O'Neill] touching [Jane Doe 2]. All I reme[m]ber is [O'Neill] walking in the computer room, and [Jane Doe 2] being very upset. . . . [Jane Doe 3] played dress up with me one time in my room. [Jane Doe 3] was jumping on my bed and the bed hit the wall. [O'Neill] came in the room because all the noise it was making it could wake up my brother from his nap.   [Jane Doe 3] playfull[y] said "spank me." [O'Neill] make it like he was when [Jane Doe 3] said "no" here and pointed to her girl part. [O'Neill] did play spank her. He never touched her befor[e] or after that.

(Br. Supp. § 2254 Pet. Ex. A 17.) "The reliability of the hand-written letter from [Jane Doe 4] is called into question first because it is not in the form of an affidavit and also because it functions primarily as a recantation of her prior testimony." *Milton v. Sec'y, Dep't of Corr.*, 347 F. App'x 528, 531–532 (11th Cir. 2009) (citations omitted); *United States v. Hackley*, 164 F. App'x 301, 305 (4th Cir. 2006) (observing that "recantation testimony [is] 'looked upon with the utmost suspicion'" (*quoting United States v. Johnson*, 487 F.2d 1278, 1279 (4th Cir. 1973))). Moreover, the Circuit Court, which had the opportunity to fully evaluate Jane Doe 4's credibility at trial, summarily rejected O'Neill's motion for a new trial based upon this letter when counsel presented it at sentencing. *See Sharpe*, 593 F.3d at 380 (emphasizing that the "state court's factual determinations should . . . exert[] a heavy pull on the [federal] habeas court's adjudication" of gateway claim of actual innocence). O'Neill simply has not presented new, reliable evidence of his innocence. *See Schlup*, 513 U.S. at 324 (admonishing that quality of evidence necessary to support a claim of innocence "is obviously unavailable in the vast majority of cases").

22

### d.   O'Neill Fails to Demonstrate that He Is Actually Innocent

Moreover, even considering O'Neill's new evidence against the evidence presented at trial, he falls far short of meeting his burden. The sum of the testimonial and physical evidence provides compelling evidence of O'Neill's guilt. As the Circuit Court observed in finding O'Neill guilty, this was not a close case: "This evidence is beyond a reasonable doubt, beyond any reasonable doubt in my view." (May 4, 2001 Tr. 240.) O'Neill's new evidence does not significantly impeach his victim's testimony, much less provide any reasonable explanation as to why they would concoct stories that he had sexually abused them. Considering all of the evidence, new and old, O'Neill's fails to demonstrate that "'it is more likely than not that no reasonable [trier of fact] would have found petitioner guilty beyond a reasonable doubt.'" *Sharpe*, 593 F.3d at 377 (*quoting Schlup*, 513 U.S. at 327–28). Accordingly, O'Neill fails to demonstrate that his alleged innocence permits the Court to review the merits of his time-barred § 2254 Petition.

### IV.  Conclusion

Respondent's Motion to Dismiss (Docket No. 26) will be GRANTED. The petition for a writ of habeas corpus will be DENIED. O'Neill's Motion of Statement of Genuine Issues (Docket No. 32) and Motion Brief in Support of Statement of Genuine Issues (Docket No. 33), wherein he requests the Court conduct an evidentiary hearing will be DENIED. The Court has considered O'Neill's various submissions in addressing the § 2254 Petition. Therefore, no action will be taken upon O'Neill's "Motion" received on July 15, 2011, wherein he requests the Court to alter the filing date for his submissions. The action will be DISMISSED.

An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (*quoting Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). No law or evidence suggests that O'Neill is entitled to further consideration in this matter. A certificate of appealability will be DENIED.

An appropriate Order shall issue.

Date: 8-9-11
Richmond, Virginia

/s/
James R. Spencer
Chief United States District Judge

24